UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TIMOTHY A. FINNEGAN,

                        Plaintiff,

    v.

STATE TROOPER LAWRENCE M.
BERBEN, *et al.*,

                        Defendants.

No. 20-CV-10231 (KMK)

OPINION & ORDER

---

Appearances:

Cary London, Esq.
Cary London Law PLLC
New York, NY
*Counsel for Plaintiff*

Charles Luskin, Esq.
Shulman and Hill, PLLC
New York, NY
*Counsel for Plaintiff*

Caitlin Anne Robin, Esq.
Caitlin Robin & Associates, PLLC
New York, NY
*Counsel for Plaintiff*

Kevin Scott Volkommer, Esq.
Gordon Rees Scully Mansukhani, LLP
New York, NY
*Counsel for Plaintiff*

Bruce J. Turkle, Esq.
Gee Won Cha, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Timothy Finnegan ("Finnegan" or "Plaintiff") brings this Action, pursuant to 42 U.S.C. § 1983, against New York State Trooper Lawrence Berben ("Berben" or "Defendant") and New York State Troopers John and Jane Does Numbers 1–10, alleging an unlawful stop and search of Plaintiff, false arrest and false imprisonment, malicious prosecution, and a denial of his right to a fair trial. (*See generally* Compl. (Dkt. No. 5).)

Before the Court is Defendant's Motion To Dismiss the Complaint in Part (the "Motion"). (*See* Not. of Mot. (Dkt. No. 36).) For the reasons explained below, Defendant's Motion is denied.

## I. Background

### A. Factual Background

The following facts are taken from the Complaint and the exhibits attached thereto and are assumed to be true for purposes of resolving the instant Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Plaintiff alleges that on February 18, 2018, at approximately 7:30 p.m., he was riding as a passenger in a car that was traveling westbound on I-84 in Orange County, New York, when a tire on the car went flat. (Compl. ¶ 12.) The driver of the car pulled over on the shoulder of the road, and Plaintiff exited the car to inspect the flat tire. (*Id.* ¶ 13.) The driver of the vehicle and the other passenger exited the vehicle and looked on as Plaintiff began to change the flat tire with a spare that he found within the car. (*Id.* ¶ 14.)

At that point, Defendant pulled up behind them in a New York State Trooper car with its lights flashing. (*Id.* ¶ 15.) Defendant exited the vehicle and began speaking with the driver and

other passenger of the car. (*Id.* ¶ 16.) Plaintiff continued to work on replacing the tire. (*Id.* ¶¶ 17–19.) When Plaintiff was finished, he turned his attention to Defendant, who asked Plaintiff where they were coming from and where they were going. (*Id.* ¶ 19.) In response, Plaintiff pointed east, in the direction they came from, and pointed west, in the direction they were headed. (*Id.* ¶ 20.) Defendant responded, "Okay, wise-ass," and proceeded to perform a pat-down frisk of Plaintiff and his two friends. (*Id.* ¶¶ 21–22.) After the pat-down frisks revealed no illegal contraband, Plaintiff observed Defendant while Defendant proceeded to search the interior of the vehicle, again finding no illegal contraband. (*Id.* ¶ 23.)

Defendant then approached Plaintiff and instructed him to put his hands behind his back. (*Id.* ¶ 24.) When Plaintiff asked if he was being arrested, Defendant responded in the affirmative. (*Id.* ¶ 25.) Plaintiff asked why he was being arrested, and Defendant responded that he and his friends were being taken to the police barracks for a strip search. (*Id.* ¶ 26.) Defendant placed all three of the occupants of the vehicle in handcuffs and put them in the back of his police vehicle. (*Id.* ¶ 31.) Plaintiff tried to explain that handcuffs were not necessary to search him, that due to the stipulations of his parole status he was required to submit to a search by authorities, and that he had nothing to hide. (*Id.* ¶ 27.) Plaintiff did not resist arrest. (*Id.* ¶ 30.) Defendant then called for a tow truck to pick up the vehicle and began writing what appeared to be a citation. (*Id.* ¶ 32.) Plaintiff asked why all of this was necessary, and Defendant responded that he had found cocaine under the hood of the car. (*Id.* ¶ 33.) However, Plaintiff had observed Defendant search the car, and he had not seen Defendant look under the hood. (*Id.* ¶ 33.)

At the Orange County State Police Barracks, Plaintiff and his friends were fingerprinted, strip searched, and charged with Criminal Possession of a Controlled Substance in the Third and

Fourth Degree. (*Id.* ¶ 35.) Plaintiff stayed overnight in custody and was arraigned the following day in Montgomery Town Court. (*Id.* ¶ 36.) Plaintiff alleges that false charges were presented against him, resulting in him being sent to Orange County Jail without bail. (*Id.* ¶ 37.) The other two occupants of the car were released on bond on February 22, 2019. (*Id.*)

While he was in Orange County Jail, Plaintiff was visited by his assigned lawyer, who informed him that the Orange County District Attorney had offered him a plea deal, in which his indictment would be waived in exchange for a plea resulting in four years in state prison, followed by three years of post-release supervision. (*Id.* ¶ 38.) On February 28, 2019, Plaintiff appeared before Judge Brown in Orange County Court for a case conference, but the conference was adjourned because Plaintiff did not have a lawyer present. (*Id.* ¶ 40.) Plaintiff appeared before Judge Brown again on March 7, 2019 for a conference, during which Plaintiff declined the plea deal. (*Id.* ¶ 41.) Plaintiff did this because he stated that he was not guilty—despite being informed by Judge Brown that he could be facing a grand jury indictment, a minimum sentence of 15 years to life, and a maximum sentence of 25 years to life. (*Id.*)

Plaintiff appeared in court several times between March and August 2019, but each time his case was adjourned. (*Id.* ¶¶ 43–46.) During this period, Plaintiff was offered another plea deal, for which he would be required to serve two years in state prison, followed by two years of post-release supervision. (*Id.* ¶ 47.) Plaintiff again declined, maintaining his innocence. (*Id.*) On August 13, 2019, Plaintiff appeared in court. (*Id.* ¶ 48.) During this court conference, the Assistant District Attorney ("ADA") offered Plaintiff a reduction of charges to a Class A misdemeanor in exchange for a plea of eight months in Orange County Jail. (*Id.*) Plaintiff declined. (*Id.*)

On September 10, 2019, Plaintiff was offered a plea of time served, but he declined again, maintaining his innocence. (*Id.* ¶ 49.) Plaintiff was offered yet another reduced plea of Disorderly Conduct on October 22, 2019, which he declined. (*Id.* ¶ 50.) On the same day, after both attorneys convened in the judge's chambers, the ADA offered Plaintiff an Adjournment in Contemplation of Dismissal nunc pro tunc if Plaintiff admitted his guilt. (*Id.* ¶ 51.) Plaintiff declined and requested a bench trial, which was set for October 29, 2019. (*Id.*) On October 29, 2019, Plaintiff appeared in court for his bench trial, at which time the charges against him were dismissed by motion of the ADA. (*Id.* ¶ 52.)

Despite his charges being dropped, Plaintiff was remanded to Orange County Jail under a parole hold. (*Id.* ¶ 53.) The parole hold was triggered from the parole violation that resulted when Plaintiff was arrested on February 18, 2019. (*Id.*) On January 21, 2020, Plaintiff appeared for his final parole revocation hearing, at which time he was released. (*Id.* ¶ 54.) In total, Plaintiff spent eleven months in Orange County Jail due to this incident. (*Id.* ¶ 55.)

Plaintiff alleges that his Fourth and Fourteenth Amendment rights were violated, and that as a result, he suffered emotional trauma and suffering, along with fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety, loss of wages and loss of liberty. (*Id.* ¶ 64.) Plaintiff brings five Causes of Action: (1) unlawful stop and search, (*id.* ¶¶ 65–67); (2) false arrest and false imprisonment, (*id.* ¶¶ 68–71); (3) malicious prosecution, (*id.* ¶¶ 72–76), (4) denial of the right to a fair trial, (*id.* ¶¶ 77–81); and (5) failure to intervene, (*id.* ¶¶ 82–85).

B.  Procedural History

Plaintiff's Complaint was docketed on December 7, 2020. (Dkt. No. 5.) On June 16, 2021, Plaintiff filed a Proposed Default Judgment and accompanying papers. (Dkt. Nos. 15–18.)

5

On July 19, 2021, the Court issued an Order to Show Cause and scheduled a default hearing to be held on August 3, 2021. (Dkt. No. 19.) However, on July 28, 2021, the Parties filed a Proposed Stipulation and Order withdrawing the Order to Show Cause and extending Defendant's time to answer until August 17, 2021. (Dkt. No. 22.) The Court signed the Stipulation and Order the next day. (Dkt. No. 23.) On August 13, 2021, Defendant filed a letter to the Court seeking an additional extension until August 31, 2021, (Dkt. No. 25), which the Court granted, (Dkt. No. 26).

On August 31, 2021, Defendant filed a pre-motion letter outlining the grounds for his anticipated motion to dismiss. (Dkt. No. 28.) On September 9, 2021, the Court adopted a briefing schedule. (Dkt. No. 29.) The same day, Plaintiff filed a letter requesting that the briefing schedule be withdrawn, because he intended to file a response to Defendant's pre-motion letter within the time permitted by the Court's memo endorsement dated August 13, 2021. (*See* Dkt. Nos. 26, 30.) The Court granted Plaintiff's request, (Dkt. No. 31), and on September 14, 2021, Plaintiff filed his response to Defendant's pre-motion letter, (Dkt. No. 32). On October 5, 2021, the Court held a pre-motion conference and adopted a briefing schedule. (*See* Dkt. No. 33.)

Defendant filed his Motion and accompanying papers on December 2, 2021. (Dkt. Nos. 36–37.) Plaintiff filed his Opposition on January 12, 2022. (Dkt. No. 38.) Defendant filed his Reply on February 3, 2022. (Dkt. No. 39.)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

6

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992

F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B. Analysis

1. Stop and Search

Plaintiff's First Cause of Action alleges that Defendant "violated the Fourth and Fourteenth Amendment because [he] stopped and searched Plaintiff without reasonable suspicion." (Compl. ¶ 66.) Defendant argues that Plaintiff's First Cause of Action should be dismissed for four reasons. (*See generally* Def.'s Mem. of Law. in Supp. of Mot. To Dismiss ("Def.'s Mem.") (Dkt. No. 39).) First, Defendant argues that his alleged actions prior to the frisk of Plaintiff did not amount to a seizure. (*Id.* at 4–5.)

"Beginning with *Terry v. Ohio*, 392 U.S. 1 [(1968)], the [Supreme] Court has recognized that a law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further." *Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt County*, 542 U.S. 177, 185 (2004). "To ensure that the resulting seizure is constitutionally reasonable, a *Terry* stop must be limited. The officer's action must be justified at its inception, and . . . reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* (quotation marks omitted). "For example, the seizure cannot continue for an excessive period of time, or

8

resemble a traditional arrest." *Id.* at 185–86 (citations omitted); *see also Gilles v. Repicky*, 511 F.3d 239, 245 (2d Cir. 2007) ("[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." (quotation marks omitted)). "In assessing whether a detention is too long in duration to be justified as an investigative stop, . . . it [is] appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the [suspect]." *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

In addition, "a police stop 'exceeding the time needed to handle the matter for which the stop was made' violates the Fourth Amendment absent independent reasonable suspicion of another offense." *United States v. Gomez*, 877 F.3d 76, 90 (2d Cir. 2017) (quoting *Rodriguez v. United States*, 575 U.S. 348, 350 (2015)). Indeed, the "'reasonableness of a seizure . . . depends on what the police in fact do,' rather than a comparison to the duration of a hypothetically expeditious seizure or the duration of a seizure in similar circumstances." *Id.* (quoting *Rodriguez*, 575 U.S. at 357). The Second Circuit added that, "[j]ust as an officer may not earn 'bonus time' to conduct inquiries for an unrelated criminal investigation by efficiently processing the matters related to the traffic stop, . . . an officer may not consume much of the time justified by the stop with inquiries about offenses unrelated to the reasons for the stop." *Id.* at 91–92.

Plaintiff compares the facts of his case to those in *Gomez*, in which the Second Circuit found that a five-minute stop was unconstitutional where the officer

> spent much of the time of the stop, if not most of it, asking questions and executing searches related to [a] heroin investigation rather than conducting ordinary inquiries incident to the traffic stop—such as checking [the plaintiff's] license, determining whether there were outstanding warrants for him, and inspecting the car's proof of

9

>insurance. Even assuming [the] detention lasted only five minutes, [the officer] extended the seizure to ask questions pertinent to an unrelated criminal investigation.

*Id.* at 91 (quotation marks and citations omitted).

Plaintiff argues that the circumstances here are similar to *Gomez* because "while Berben's original approach [of] the vehicle was justified by the safety concerns presented by a vehicle's disability" on the side of the road, the subsequent "questioning regarding a travel itinerary" "was not incident to that justification." (Pl.'s Mem. in Opp'n to Def.'s Mot. To Dismiss the Compl. ("Pl.'s Opp'n") 5 (Dkt. No. 38).) Taking Plaintiff's version of the events to be true, the Court agrees. Indeed, courts in the Second Circuit have followed *Gomez* and invalidated stops where the officer prolonged the stop in order to pursue an unrelated investigation. *See, e.g.*, *Millan-Hernandez v. Barr*, 965 F.3d 140, 147 (2d Cir. 2020) (finding that there was "little doubt" that a stop where the plaintiff was a passenger in a car "was extended beyond what was reasonably necessary to address and resolve the immediate traffic concern," because although the "traffic inquiry lasted a matter of minutes," "the occupants of the vehicle were then detained for approximately two hours as the local officer directed the group to await the arrival of [Customs and Border Protection] agents"); *McLeod v. Mickle*, 765 F. App'x 582, 585 (2d Cir. 2019) (summary order) (finding that the plaintiff's allegations supported "a reasonable inference that [the officer] prolonged the traffic stop beyond the time needed to issue a citation for [the plaintiff's] expired state inspection sticker and that he did so to pursue an unrelated investigation into whether [the plaintiff] was carrying illegal drugs in his vehicle"); *United States v. Parks*, No. 19-CR-87, 2022 WL 1819383, at *7 (W.D.N.Y. June 3, 2022) (invalidating stop where the officer, after pulling the plaintiff over for a traffic citation, "did what he needed to do to fulfil[l] those legitimate purposes in just a minute or two" and then unlawfully prolonged the stop by

10

asking the plaintiff unrelated questions about his travel itinerary and whether drugs were present in the car); *Ramirez v. City of New York*, No. 16-CV-4174, 2018 WL 4189511, at *5 (S.D.N.Y. Aug. 31, 2018) (finding that the defendant officer unlawfully prolonged a stop where the officer "r[an] a warrant check on" "a mere passenger in a taxi alleged to have been involved in a traffic infraction," because the plaintiff "had already been ordered out of the car and had been subjected to a frisk which returned nothing unlawful or suspicious").

Second, Defendant argues that the pat-down search of Plaintiff was justified due to his status as a parolee. (Def.'s Mem. 6–7.) Defendant bases this argument on the Supreme Court's decision in *Samson v. California*, 547 U.S. 843 (2006). (*See id.*) In *Samson*, the Supreme Court found that a suspicionless search of a California parolee conducted under 3067(a) of the California Penal Code did not violate the Fourth Amendment. *See Samson* 547 U.S. at 846. That law provides that every prisoner eligible for release on state parole "shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." *Id.* (quoting Cal. Penal Code Ann. § 3067(a)).

However, as Plaintiff points out, the statute at issue in *Samson* does not apply to New York parolees. Indeed, "*Samson* specifically addressed a California parole statute that explicitly allowed for a search without cause by a parole officer [or other peace officer]. New York does not have an analogous provision." *Alvarado v. City of New York*, 482 F. Supp. 2d 332, 336 (S.D.N.Y. 2007) (citations omitted). More specifically, "New York does not have parole-specific search provisions, relying instead upon the conditions of parole that parolees sign upon their release . . . ." *Gathers v. White*, No. 04-CV-5454, 2007 WL 446755, at *3 n.4 (E.D.N.Y. Feb. 8, 2007), *aff'd sub nom. Gathers v. Burdick*, 308 F. App'x 525 (2d Cir. 2009) (citing N.Y.

11

Crim. Proc. Law § 410.91(6)); *see People v. Hill*, No. 01-188, 2002 WL 88977, at *1 (1st Dep't 2002) ("The standard authorization for . . . searches by parole officers given by [the] defendant as a condition of his parole does not constitute an unrestricted consent to any and all searches and does not obviate a showing by the parole officers that the search was rationally related to [their] duty to detect and prevent parole violations."); *see also People v. Jennings*, 106 N.Y.S.3d 50, 52 (2019) (upholding search of parolee by parole officer because it was "rationally and reasonably related to the performance of [the officer's] duty as [the defendant's] parole officer").

Moreover, the Second Circuit has noted that "[t]he New York Court of Appeals has explained that 'whether [a parole search] was unreasonable and thus prohibited by constitutional proscription must turn on whether the conduct of the *parole officer* was rationally and reasonably related to the performance of the parole officer's duty.'" *United States v. Grimes*, 225 F.3d 254, 258 (2d Cir. 2000) (quoting *People v. Huntley*, 43 N.Y.2d 175, 181 (1977)) (emphasis added). The Second Circuit has noted the distinction between searches by parole offerings, who are responsible for "further[ing] the special needs of the . . . parole system," and searches by police officers, who are "charged with vindicating the 'States general interest in law enforcement,'" *United States v. Braggs*, 5 F.4th 183, 188 (2d Cir. 2021) (quoting *Ferguson v. City of Charleston,* 532 U.S. 67, 79 (2001) and *United States v. Barner*, 666 F.3d 79, 86 (2d Cir. 2012)). The "special needs" doctrine therefore "rest[s] on the rehabilitative relationship between the parolee and the parole officer, and thus [does] not extend[] to other law enforcement officers unless they are acting under the direction of the parole officer." *Id.* (quoting *United States v. Freeman*, 479 F.3d 743, 748 (10th Cir. 2007)). Here, Defendant is a New York State Trooper, not a parole officer, and the Complaint does not contain any allegations suggesting that Defendant was acting under the direction of Plaintiff's parole officer when he frisked Plaintiff.

12

(*See generally* Compl.) Thus, at this juncture, the Court cannot dismiss Plaintiff's claim that Defendant's search of Plaintiff's person was unlawful due solely to Plaintiff's status as a parolee.

Defendant makes two additional arguments: (1) that the vehicle was not seized for purposes of the Fourth Amendment, (Def.'s Mem. 7–8), and (2) that Plaintiff lacks standing to challenge the search of the vehicle, (*id.* at 8–9). However, Defendant concedes that "Plaintiff does not appear to contend that the stop of the vehicle was unconstitutional," nor does Plaintiff "appear to assert a claim that the search of the vehicle violated the Fourth Amendment, as his First Cause of Action specifies that it is based upon the search of his person." (*See id.* at 7–8.) Because the Court agrees that Plaintiff does not make either of these claims, the Court will not address these arguments.

In sum, the Court denies Defendant's Motion To Dismiss Plaintiff's First Cause of Action.

### 2. Qualified Immunity

Defendant also seeks dismissal on the grounds of qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks omitted). Qualified immunity shields a defendant from standing trial or facing other burdens of litigation "if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001) (quotation marks omitted).

The Supreme Court has held that when evaluating an asserted qualified immunity defense, a court may begin by examining whether a reasonable officer in the defendant's position would have believed his or her conduct would violate the asserted constitutional right. *See Pearson*, 555 U.S. at 236 (overruling *Saucier v. Katz*, 533 U.S. 194 (2001), and explaining that judges are no longer required to begin by deciding whether a constitutional right was violated but are instead "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first"). The Supreme Court has further instructed that "[t]o be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (second alteration in original) (citations and quotation marks omitted). Furthermore, "the right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." *Id.* at 665 (citations and quotation marks omitted). Put another way, to determine whether a right is clearly established, courts must determine "whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011).

Given that "qualified immunity is not only a defense to liability, but also provides immunity from suit," a court should resolve a "defendant's entitlement to qualified immunity . . . 'at the earliest possible stage in litigation.'" *Lynch v. Ackley*, 811 F.3d 569, 576 (2d Cir. 2016) (quoting *Pearson*, 555 U.S. at 231–32). "[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion," but a district court may grant a

14

Rule 12(b)(6) motion on the ground of qualified immunity if "the facts supporting the defense appear on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (italics omitted). As a result, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept [that] . . . the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.* (quotation marks omitted).

Defendant argues that he is entitled to qualified immunity as to the First Cause of Action. (Def.'s Mem. 9–10.) The Court disagrees. Here, taking the facts as alleged in the Complaint as true, Defendant did not observe Plaintiff or his friends "commit[ing] any crime or display[ing] any suspicious or illegal activity," (Compl. ¶ 18), nor did he have reasonable suspicion to stop and search Plaintiff's person, (Compl. ¶ 66). According to the Complaint, Defendant simply pulled over when he observed Plaintiff changing a flat tire on the side of the road, asked Plaintiff where he and his friends about their travel itinerary, and, when Plaintiff gave an allegedly "wise-ass" response, Defendant decided to perform a pat-down frisk of Plaintiff and his friends—a frisk which revealed no illegal contraband. (*See* Compl. ¶¶ 12–22.)

"[T]he right to be free from unreasonable search and seizure . . . is a clearly established right. Moreover, [] [P]laintiffs allegations, if proven, would establish a violation of that right." *Foreman v. Beckwith*, 260 F. Supp. 2d 500, 505 (D. Conn. 2003). More specifically, "[s]ince *Terry* [*v. Ohio*], it has been clearly established that when an officer can point to no facts at all to justify a hunch [supporting reasonable suspicion], the detention violates the Fourth Amendment." *Vasquez v. Maloney*, 990 F.3d 232, 240 (2d Cir. 2021). In *Vasquez*, the Second Circuit found that the defendant officers were not entitled to qualified immunity where "the undisputed facts offer no basis for a belief that [the plaintiff] posed a danger to anyone as is

15

required to justify a frisk for weapons." *Id.* at 242–43; *cf. Stratton v. Russell*, No. 13-CV-520, 2017 WL 1184191, at *4–6 (N.D.N.Y. Mar. 29, 2017) (finding that the defendant was not entitled to qualified immunity where, under *Rodriguez*, the officer did not have reasonable suspicion to frisk the plaintiff or prolong the stop).[1]

Thus, because Plaintiff had a clearly established right to be free from prolonged stops and suspicionless frisks, Defendant is not entitled to qualified immunity as to Plaintiff's First Cause of Action.

### III. Conclusion

For the reasons stated above, Defendant's Motion is denied. The Clerk of Court is respectfully directed to terminate the instant Motion, (Dkt. No. 36).

SO ORDERED.

DATED:   June 29, 2022
         White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[1] The Second Circuit also held in a summary order that the "Fourth Amendment right to be free of an unreasonably prolonged stop was 'clearly established' at the time of the stop" because "*Rodriguez* was decided in April 2015, clearly establishing such a right well before [the officer] stopped [the plaintiff] in June 2016." *McLeod*, 765 F. App'x at 585 n.2. The Second Circuit "therefore conclude[d] that the right at issue was 'clearly established' when [the defendant] allegedly violated it." *Id.*